IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

GARRY THOMAS SIGGELKOW,                     No. 3:18-cv-01494-HZ
an individual,

        Plaintiff,

    v.

NORTHWEST GROUP, INC., a                     OPINION & ORDER
domestic corporation, RAJEEV K.
GUPTA, an individual,

        Defendants.


Eric D. Wilson
ERIC WILSON, P.C.
1500 S.W. First Ave., Suite 1170
Portland, Oregon 97201

      Attorney for Plaintiff

/ / /

/ / /


1 - OPINION & ORDER

Brian D. Chenowith
CHENOWITH LAW GROUP, P.C.
510 S.W. Fifth Avenue, Fifth Floor
Portland, Oregon 97204

Attorney for Defendants

HERNANDEZ, District Judge:

Plaintiff Garry Siggelkow brings this employment-related action against his former

employer Northwest Group, Inc. (NGI) and NGI's President Rajeev Gupta.  Defendants move to

compel arbitration pursuant to an alternative dispute resolution agreement.  I deny the motion.

BACKGROUND

I.  Factual Background

In his Amended Complaint, Plaintiff alleges that Defendants employed him to work at

their Jack-in-the-Box fast food restaurants throughout Oregon.  Am. Compl. ¶ 5.  Although he

was hired as NGI's "Director of Service Delivery," *id.* ¶ 6, his job was to travel to the restaurants

to perform maintenance work.  Siggelkow Decl. ¶ 3.  He had a written employment contract,

signed by Gupta, in which Defendants promised to reimburse Plaintiff for mileage, travel

expenses, and other reasonable expenses associated with his work.  Am. Compl. ¶ 7 & Ex. 1.

Plaintiff alleges that Defendants did not fully reimburse him for these expenses.  *Id.* ¶¶ 8.  As a

result, when his employment ended, Plaintiff alleges he was owed "considerable amounts" for

unpaid mileage, travel, and other reasonable expenses.  *Id.* ¶ 9; *see also id.* ¶¶ 14-17 (breach of

contract claim allegations seeking $3,805.04 in damages on that claim).

Plaintiff further alleges that Defendants misclassified him as an exempt employee under

the Fair Labor Standards Act and Oregon statutes, paying him a salary of $60,000 per year with

no opportunity for overtime pay. *Id.* ¶¶ 20, 43. He alleges he should have been classified as a non-exempt hourly employee and paid overtime for hours worked in excess of forty per week as required by the wage statutes. *Id.* ¶¶ 21, 44. He alleges that Defendants denied him at least 1,160 hours of overtime work during his period of employment from January 9, 2017 through January 4, 2018. *Id.* ¶¶ 23, 24; *see also id.* ¶¶ 36, 45 (unpaid wages owed on overtime claim at least $36,238.40).

In support of their motion, Defendants submit a copy of an offer of employment ("Employment Agreement") by Defendants to Plaintiff which was signed by Gupta and Plaintiff, as well as Michele Smith, NGI's Human Resources Manager. Gupta Decl., Ex. B, ECF 9 at 16. Plaintiff was offered the position of Director of Service Delivery, with a start date of January 9, 2017. *Id.* Other benefits and employment terms are recited in the employment agreement. *Id.* There is no mention of any employee or personnel handbook or dispute resolution policy. *Id.*

Defendants also rely on a "Mediation/Arbitration Agreement Acknowledgement [sic]," ("Arbitration Agreement") signed by Plaintiff and dated January 9, 2017. *Id.*, Ex. C, ECF 9 at 18. Because its terms are relevant to the motion, I recite them here:

> My signature on this document acknowledges that I understand the Dispute Resolution Policy as specified in the Employee Handbook and agree to abide by its conditions. I also acknowledge that I understand that my employment is at-will and may be terminated at any time, with or without reason, by either NGI or myself. I further agree that, in accordance with NGI's Dispute Resolution Policy, I will submit any dispute arising under or involving my employment or termination of employment with NGI within one (1) year from the date the dispute first arose. I agree that arbitration shall be the exclusive forum for resolving all disputes arising out of or involving my employment or termination with NGI. I agree that I will be entitled to legal representation, at my own cost, during arbitration. I further understand that I will be responsible for half of the cost of the arbitrator and any incidental costs of arbitration.

**I acknowledge that I have received or have had the opportunity to read this arbitration agreement. I understand that this arbitration agreement requires that disputes involving matters subject to the agreement be submitted to mediation or arbitration pursuant to the Dispute Resolution Process rather than to a judge or jury in court.**

*Id.*

In his Declaration opposing the motion, Plaintiff states that he did not see the Dispute Resolution Policy referred to in the Arbitration Agreement until his attorney received a copy of it during this litigation in October 2018. Siggelkow Decl. ¶ 11. Although he does not deny that he signed the Arbitration Agreement on his first day of work, he states that he signed it sometime during the day after he had actually begun working. *Id.* According to Plaintiff, Gupta told Plaintiff he needed to sign it. *Id.* Plaintiff states he requested a copy of the Dispute Resolution Policy at that time. *Id.* ¶ 13. When he had not received it later that week, he asked for it again. *Id.* Plaintiff states that in response, he was told by NGI's Director of Training that NGI did not provide copies of the employee handbook or Dispute Resolution Policy to employees because Gupta did not want to pay the costs associated with photocopying the documents. *Id.*

Smith states that Plaintiff signed his Employment Agreement on January 7, 2017. Smith Decl. ¶ 3, ECF 20. This contradicts the January 9, 2017 date on the Employment Agreement itself. Gupta Decl., Ex. B, ECF 9 at 16 (date shown at top of Employment Agreement is January 9, 2017 and underneath each of the three signatures of Gupta, Smith, and Siggelkow, the date is printed as January 9, 2017, with the exception of the date under Smith's signature which shows the year as 2016 and which I assume is a typographical error). Given the dates shown on the Employment Agreement, I assume the January 7, 2017 date recited by Smith in her Declaration is a mistake and that she meant to state that Plaintiff signed the Employment Agreement on January

9, 2017.  Smith also states that Plaintiff went through orientation where he was provided a copy of the employee handbook containing the Dispute Resolution Policy.  Smith Decl. ¶ 3.  She asserts that Plaintiff had notice of the entire Dispute Resolution Policy "since he started working at [NGI]."  *Id.* ¶ 5.

The Dispute Resolution Policy is not in the record.  On October 25, 2018, ten days after Defendants filed the instant motion to compel arbitration, Defendants' then-counsel filed a Declaration in which he stated that he was submitting a copy of the "company manual and ADR policy" to the Court *in camera*.  Hoover Oct. 25, 2018 Decl. 3, ECF 14.  A hard copy of the document was delivered to the Court on or about the day the Declaration was filed.  In a November 7, 2018 Minute Order, I explained that parties may not unilaterally submit *in camera* documents.  ECF 18 (citing case law regarding the presumption of access to court records and the general right to inspect and copy public records, including judicial records and documents).  Because there was no court order allowing submission of *in camera* documents, I stated that I would disregard the *in camera* submission of the company handbook and ADR policy.  *Id.*  I ordered Defendants to file the document as an exhibit to a declaration or to file a properly supported motion to file the document under seal.  *Id.*  Defendants did neither.  Thus, there is no copy of the company handbook and ADR policy in the record.

II.  Procedural Background

Plaintiff first initiated this case against Defendants in "Small Claims Court"[1] in

---

[1]  The parties refer to "Small Claims Court" as separate from "Circuit Court."  However, under Oregon statute, the "small claims department" is part of the "circuit court."  Or. Rev. Stat. § (O.R.S.) 46.405(1) (requiring, unless otherwise provided, "each circuit court" to "have a small claims department").  The small claims departments of state circuit courts handle only certain types of cases and only those with claims up to $10,000.  O.R.S. 46.405(2)-(5).  Although the

Multnomah County on May 11, 2018, seeking reimbursement for $3,805.04 in unclaimed travel expenses, and $400 in costs. Wilson Decl., Ex. 1, ECF 17 at 4-7. In response, Defendants filed a General Notice of Appearance. *Id.*, Ex. 2, ECF 17 at 8-10. Defendants then filed several motions. Tr. of State Ct. Procdgs. (Small Claims Court), ECF 3 at 18-20 (motion to allow attorney to represent Defendants in Small Claims Court); at 62-63 (motion to dismiss Gupta due to corporate shield); at 86-87 (motion to dismiss for lack of personal jurisdiction due to insufficient process); at 96-97 (motion to dismiss due to improper venue). The motions were denied. *Id.* at 28 (denying Defendants' request that they be represented by counsel); Wilson Decl., Ex. 3, ECF 17 at 12-14 (denying motions to dismiss due to corporate shield, insufficient process, and improper venue).

Defendants also moved for an order of abatement to allow them to submit the matter to arbitration pursuant to contract. Tr. of State Ct. Procdgs., ECF 3 at 60-61. This motion was also denied. Wilson Decl., Ex. 4, ECF 17 at 15. The Small Claims Court explained that Defendants waived any contractual right to avoid a court disposition of this civil dispute by filing a general appearance. *Id.*

The next week, Defendants filed a breach of contract counterclaim against Plaintiff, seeking $9,835.91 plus attorney's fees and costs, based on allegations that Plaintiff had breached a contract by "poor execution of job performance" and causing NGI lost profits and expenses. *Id.*, Ex. 5, ECF 17 at 16-18. Defendants demanded a jury trial "if any of their motions are not granted and the case is not dismissed." *Id.*, ECF 17 at 17. Because of the counterclaim and jury

---

small claims department is part of a circuit court, I use the terms "Small Claims Court" and "Circuit Court" to comport with the parties' terminology.

trial demand, the case was transferred out of Small Claims Court and to Circuit Court. Plaintiff hired counsel to defend the counterclaim. Wilson Decl. ¶ 8; Siggelkow Decl. ¶ 10, ECF 16.

Plaintiff filed an Amended Complaint in Multnomah County Circuit Court on July 30, 2018, alleging breach of contract for unpaid travel expenses and violations of the FLSA and Oregon wage laws. Wilson Decl. ¶ 11; Tr. of State Ct. Procdgs. (Circuit Court), ECF 4 at 11-19. Defendants then removed the case to this Court on August 13, 2018. Notice of Removal, ECF 1. They filed an Answer on August 27, 2018, in which they again demanded a jury trial "if any of their motions are not granted and the case is not dismissed." Answer to Am. Compl. at p. 5, ECF 6. As an affirmative defense, they alleged that the Complaint was prematurely filed because the employment contract required arbitration before filing suit. *Id.* at p. 6. And, they also brought the same counterclaim for breach of contract based on allegations that Plaintiff breached the employment agreement which required him "to act in manner to not cause excess cost and expense on the defendant NGI[.]" *Id.* at 6-7. This time, they sought lost profits of over $30,000, along with attorney's fees and costs. *Id.*

According to Plaintiff, after Defendants filed their Answer to the Amended Complaint, the parties held a Rule 26 discovery conference on September 26, 2018, and Plaintiff served discovery requests on Defendants on October 2, 2018. Wilson Decl. ¶ 12. Then, on October 15, 2018, Defendants filed this motion to compel arbitration.

## STANDARDS

The Federal Arbitration Act (FAA) provides that arbitration agreements "shall be valid, irrevocable, and enforceable[.]" 9 U.S.C. § 2. Courts may decline to enforce an arbitration agreement if grounds "exist at law or in equity for the revocation of any contract." *Id.* Courts

must place arbitration agreements "upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 ( 1991).

When evaluating a motion to compel arbitration, courts should determine: "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000). When determining the validity of an agreement to arbitrate the courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

## DISCUSSION

Defendants argue that arbitration of Plaintiff's claims is mandatory under the Arbitration Agreement. They contend that the Agreement was signed on the "date of employment" and there was sufficient consideration by the parties "for the entire year of employment in order for this portion of the contract to be enforced." Def.'s Mem. 5, ECF 9 at 9. Although not mentioned by Defendants, presumably they contend that the Arbitration Agreement encompasses the claims at issue in this case. Plaintiff does not argue otherwise.

Plaintiff argues that the Arbitration Agreement is unenforceable because: (1) the state court already rejected its application; (2) it was not supported by consideration; (3) NGI waived any right it had to arbitration by twice suing Plaintiff for money damages and demanding a jury trial; and (4) it is void because it is both procedurally and substantively unconscionable. In reply, Defendants cite to no relevant case law, curiously argue that their motion is based on the FLSA, and further argue that they did not waive the right to arbitration because their motion to compel arbitration was brought in state court before an answer and counterclaims were filed, the

Arbitration Agreement is supported by consideration, and the Arbitration Agreement is not unconscionable.

## I. Consideration

Arbitration agreements, like other contracts, require consideration to be enforceable. *E.g.*, *Kaiser v. Cascade Capital LLC*, No. 3:16-cv-00744-AC, 2017 WL 2405251, at *2 (D. Or. Mar. 27, 2017) (courts apply ordinary state-law principles governing contract formation to determine validity of an arbitration agreement; Oregon law requires a bargain in which there is "'a manifestation of mutual assent to the exchange and a consideration.'") (quoting *Ken Hood Constr. Co. v. Pac. Coast Constr., Inc.*, 201 Or. App. 568, 578, 120 P.3d 6, 11 (2006)), *adopted by J. Mosman*, 2017 WL 2001345 (D. Or. July 12, 2017); *Hermida v. JP Morgan Chase Bank, N.A.*, No. 3:15-cv-00810-HZ, 2015 WL 6739129, at *3 3 (D. Or. Nov. 3, 2015) (looking to Oregon contract law to determine whether there was adequate consideration to support an arbitration agreement).

Plaintiff argues that consideration is lacking here because he was already working as an employee of NGI when he signed the Arbitration Agreement during his first day of work and the document does not promise continued at-will employment. He also notes that the Arbitration Agreement does not require NGI to arbitrate its claims against Plaintiff. Therefore, he contends that NGI did not relinquish "some right, interest, profit, or benefit" by mandating that Plaintiff sign the document during his employment.

Under Oregon contract law, continued employment is sufficient consideration to support a change in the terms and conditions of employment. *Hermida*, 2015 WL 673339129, at *3 (citing cases). This is true for arbitration agreements as well, where consideration is found by an

at-will employee's continued employment. *E.g., Wilson v. Bristol-Myers Squibb Co.*, No. 3:17-CV-2054-SI, 2018 WL 2187443, at *4 (D. Or. May 11, 2018) (continued employment of at-will employee is sufficient consideration under Oregon law to support arbitration agreement); *Reid v. Optumhealth Care Sols., Inc.*, No. 3:12-cv-00747-ST, 2012 WL 6738542, at *4 (D. Or. Oct. 11, 2012) ("For an at-will employee, continued employment provides sufficient consideration for modification of the original contract of employment.") (internal quotation marks omitted), *adopted by J. Mosman*, 2012 WL 6738515 (D. Or. Dec. 28, 2012). Thus, assuming that Defendants presented the Arbitration Agreement to Plaintiff sometime on his first day of work but after he had actually started working, Defendants' unilateral change to Plaintiff's employment terms is viewed as "an offer to the employee which can be accepted by the employee's continued employment" and thus, "such employment constitutes the underlying consideration[.]" *McHorse v. Portland Gen. Elec. Co.*, 268 Or. 323, 331, 521 P.2d 315, 319 (1974). Because there is adequate consideration for the Arbitration Agreement, I do not address the lack of reciprocal arbitration requirements here. However, I address it below in connection with Plaintiff's unconscionability argument.

## II. Waiver

Plaintiff argues that Defendants, knowing of the right to compel arbitration, acted inconsistently with that right by twice suing Plaintiff for money damages and twice demanding a jury trial on their claims. Plaintiff further contends that he has been prejudiced because Defendants have delayed resolution of the matter, forced Plaintiff to incur significant additional costs, and forced Plaintiff to hire an attorney to respond to Defendants' counterclaim.

"A determination of whether the right to compel arbitration has been waived must be

conducted in light of the strong federal policy favoring enforcement of arbitration agreements."

*Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (internal quotation marks omitted).

"Because waiver of the right to arbitration is disfavored, any party arguing waiver of arbitration

bears a heavy burden of proof'" *Id.* (internal quotation marks omitted). To satisfy that burden,

Plaintiff, as the party seeking to prove waiver of the right to arbitrate, must establish: "(1)

knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right;

and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id.*

(internal quotation marks omitted).

Defendants do not contest knowledge of the Arbitration Agreement. On the second

element, the Ninth Circuit has explained that acts inconsistent with the right to arbitrate are

found "when a party chooses to delay his right to compel arbitration by actively litigating his case

to take advantage of being in federal court." *Id.* at 1125 (citing *Van Ness Townhouses v. Mar*

*Indus. Corp.*, 862 F.2d 754, 756, 759 (9th Cir. 1988) (finding waiver when party answered

complaints, moved to dismiss the action, and did not claim a right to arbitration in any of the

pleadings); *Kelly v. Pub. Utility Dist. No. 2*, 552 Fed. App'x. 663, 664 (9th Cir. 2014) (finding

waiver when the parties "conducted discovery and litigated motions, including a preliminary

injunction and a motion to dismiss"); *Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063,

1067-68 (C.D. Cal. 2011) (finding waiver when the defendant actively litigated the case by

removing it to federal court, seeking a venue transfer, participating in meetings and scheduling

conferences, negotiating and entering into a protective order, and participating in discovery that

would not have been available under the arbitration agreement)). In *Martin,* the court concluded

that the defendants had acted inconsistently with the right to arbitrate when they spent seventeen

months litigating the case including "devoting considerable time and effort to a joint stipulation structuring the litigation, filing a motion to dismiss on a key merits issue, entering into a protective order, answering discovery, and preparing for and conducting a deposition." *Id.* at 1126 (footnote omitted). Additionally, the court observed that the defendants failed to "even note their right to arbitration until almost a year into the litigation and did not move to enforce that right until well after that time." *Id.*

This case is distinguishable from *Martin* and other cases where courts have found conduct inconsistent with the right to arbitrate. First, Plaintiff cites Defendants' twice filing a counterclaim and seeking a jury trial on that counterclaim as acts inconsistent with the right to arbitration. But, as Plaintiff argues elsewhere, and as I determine below, the Arbitration Agreement applies only to claims brought by Plaintiff. Thus, Defendants' filing claims against Plaintiff and seeking a jury trial on them is consistent with the right to arbitrate in this case. And, as to the counterclaim with jury trial demand filed in this Court, that claim would likely be considered a compulsory counterclaim under Federal Rule of Civil Procedure 13 because it arises out of Plaintiff's employment relationship with Defendants and thus "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and does not require adding another party over which the court cannot acquire jurisdiction. Fed. R. Civ. P. 13(a). Filing a compulsory counterclaim is not inconsistent with the right to arbitrate. *Hoffman v. Swift Transp. Co., Inc.*, No. CV 07-321-AS, 2007 WL 4268769, at *1 (D. Or. Nov. 30, 2007).

Second, Defendants' other litigation conduct was not inconsistent with the right to compel arbitration. Defendants filed their first motion to compel arbitration on June 5, 2018, only three weeks after the case was brought in Small Claims Court. Tr. of State Ct. Procdgs., ECF 3 at 60-

61.  Although Defendants filed several other motions in the case, all but one were filed simultaneously with the motion to compel arbitration.  *Id.* at 62, 86, 96 (motions to dismiss based on Gupta's "corporate shield," insufficient service of process, and improper venue all filed June 5, 2018).  The only motion filed before the motion to compel arbitration was a motion to allow an attorney to represent Defendants in Small Claims Court.  *Id.* at 18.  Seeking permission to have attorney representation is not inconsistent with the right to arbitrate.  Further, filing motions to dismiss simultaneously with the motion to compel arbitration is best understood as Defendants presenting alternative arguments to the Small Claims Court:  either compel arbitration or dismiss the case on a variety of grounds.  This is not conduct inconsistent with the right to arbitrate.  Finally, the fact that Defendants filed a general notice of appearance in state court does not, in this Court's opinion, show conduct inconsistent with the right to arbitrate.  Although the Small Claims Court came to the opposite conclusion, that Court cited no law in support of its decision and at the time, only a state law claim by Plaintiff was at issue.  Presumably, the Small Claims Court resolved the issue based on state law, not federal law which is applicable here.  Given the relevant caselaw discussed above, a general notice of appearance, without more, is not inconsistent with the right to arbitrate.

Once the case was in Circuit Court, Defendants timely removed it to this Court.  They then filed an Answer, along with the counterclaim and jury trial demand.  In *Hoffman*, Judge Ashmanskas explained that such actions are not inconsistent with the right to arbitrate because the defendant had no choice but to respond to the complaint in that case "in a manner sufficient to preserve its right to oppose" the plaintiff's claims.  *Hoffman*, 2007 WL 4268769, at *1.  He explained that under relevant federal rules, a notice of removal must be filed within thirty days of

service and a demand for a jury trial must be made in the responsive pleading. *Id.* Moreover, an answer must be timely filed and include all defenses to the claim except those specified in Rule 12(b). *Id.* (citing Fed. R. Civ. P. 12(b)). Because this conduct was required to preserve the defendant's rights, it was not inconsistent with the right to compel arbitration. *Id.* The same is true here.

Because I find that Defendants' litigation conduct was not inconsistent with the right to compel arbitration, I decline to address the third element of the waiver analysis regarding prejudice. Plaintiff fails to meet his burden to establish that Defendants waived their arbitration rights.

III. Unconscionability

Plaintiff argues that the Arbitration Agreement is procedurally and substantively unconscionable, rendering it void. In Oregon, contracts may be rendered unenforceable because they are unconscionable. *Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543, 554, 340 P.3d 27, 35 (2014). "'Unconscionability is a question of law determined by the court 'based on the facts in existence at the time the contract was made.'" *Wilson*, 2018 WL 2187443, at *4 (quoting *Motsinger v. Lithia Rose–FT, Inc.*, 211 Or. App. 610, 614, 156 P.3d 156, 160 (2007)). "'The party asserting unconscionability bears the burden of demonstrating that the arbitration clause in question is, in fact, unconscionable.'" *Id.* (quoting *Motsinger*, 211 Or. App. at 614, 156 P.3d at 159-60).

Under Oregon law, the test for unconscionability has both procedural and substantive components. *Bagley*, 356 Or. at 555, 340 P.3d at 35. "'Procedural unconscionability refers to the conditions of contract formation and focuses on two factors: oppression and surprise.'" *Wilson*, 2018 WL 2187443, at *4 (quoting *Bagley*, 356 Or. at 555, 340 P.3d at 35). Substantive

unconscionability "'generally refers to the terms of the contract, rather than the circumstances of formation, and focuses on whether the substantive terms contravene the public interest or public policy.'" *Id.* (quoting *Bagley*, 356 Or. at 555, 340 P.3d at 35-36).  As Judge Simon recently explained, the Ninth Circuit, interpreting Oregon law, held in a 2009 case that "'[a]lthough both forms of unconscionability are relevant, only substantive unconscionability is absolutely necessary.'" *Wilson*, 2018 WL 2187443, at *5 (quoting *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1093 (9th Cir. 2009)) (ellipsis omitted).  Judge Simon also observed that after *Chalk*, the Oregon Supreme Court decided *Bagley* which declined to resolve the question of whether both substantive and procedural unconscionability were required to invalidate a contract.  *Id.*; *Bagley*, 356 Or. at 556 n.8, 340 P.3d at 36 n.8.  Thus, *Bagley* did not change the Ninth Circuit's interpretation of Oregon law which remains valid and requires only substantive unconscionability to invalidate a contract.

Plaintiff argues that the Arbitration Agreement is procedurally unconscionable because Gupta presented it to him during his first day of work with no chance to negotiate its terms and despite his repeated requests, he was never provided a copy of the Dispute Resolution Policy while employed and did not obtain one until Defendants produced it in litigation.  As to substantive issues, he relies on the disparity of bargaining power, the one-sided nature of the Arbitration Agreement, the one-year limitation on claims, and the requirement that he pay one-half of the arbitration-related costs.

A.  Procedural Unconscionability

Plaintiff's argument implicates both the oppression and surprise prongs of procedural unconscionability.  Oppression involves consideration of whether "'there is an inequality in

bargaining power between the parties, resulting in no real opportunity to negotiate the terms of the contract and the absence of meaningful choice.'" *Wilson*, 2018 WL 2187743, at *4 (quoting *Bagley*, 356 Or. at 555, 340 P.3d at 35). Evidence of oppressive conduct can include "'gross inequality of bargaining power, a take-it-or-leave it bargaining stance, and the fact that a contract involves a consumer transaction.'" *Id.* (quoting *Bagley*, 356 Or. at 555, 340 P.3d at 35).

Nonetheless, as *Wilson* and other cases in this district have recognized, in Oregon, "more than a contract of adhesion and unequal bargaining power is required to void an arbitration clause." *Fuqua v. Kenan Advantage Grp., Inc.*, No. 3:11-cv-01463-ST, 2012 WL 2861613, at *10 (D. Or. Apr. 13, 2012), *adopted by J. Simon*, 2012 WL 2861660 (D. Or. July 11, 2012); *Willis v. Nationwide Debt Settlement Group*, 878 F. Supp. 2d 1208, 1222 (D. Or. 2012) (contract of adhesion alone insufficient to establish unconscionability); *Wilson*, 2018 WL 2187443, at *5 (under Oregon law, "'take-it-or-leave it' arbitration contracts in the context of beginning new employment "are not procedurally unconscionable"); *Bettencourt v. Brookdale Senior Living Cmtys., Inc.*, No. 09-CV-1200-BR, 2010 WL 274331, at *10 (D. Or. Jan. 14, 2010) ("'[A] contract of adhesion—an agreement presented on a take-it-or-leave-it basis—reflects unequal bargaining power....'" *Chalk*, 560 F.3d at 1094 (citing *Motsinger*, 211 Or. App. at 615, 156 P.3d 156). In *Motsinger*, however, the Oregon Court of Appeals held unequal bargaining power is insufficient alone to invalidate an arbitration clause without some evidence of deception, compulsion, or unfair surprise. *Id.* at 615-17, 156 P.3d 156.").

Without more, the fact that Defendants "foisted" the Arbitration Agreement upon Plaintiff with no ability to negotiate its terms does not make it procedurally unconscionable. Plaintiff, however, contends that some evidence of "deception" or "surprise" is apparent here because the

Dispute Resolution Policy, referred to the Arbitration Agreement, was never provided to him.

Surprise involves whether terms were hidden or obscure such as being in fine print, or were worded ambiguously. *Wilson*, 2018 WL 2187443, at *4. Thus, if the Arbitration Agreement's terms were not fully disclosed, were unreasonably ambiguous, or were otherwise hidden or obscure, Plaintiff may be able to establish procedural unconscionability based on the combination of unequal bargaining power, the inability to negotiate the terms, and surprise. The problem for Plaintiff is that he does not dispute that he signed the Arbitration Agreement. That document in and of itself requires arbitration of the claims he brings in this case even without referring to the Dispute Resolution Policy.

Additionally, the express language of the Arbitration Agreement states that Plaintiff's signature on that Agreement constitutes an acknowledgment that he understands the Dispute Resolution Policy as specified in the employee handbook. Under Oregon law, a "party 'is presumed to be familiar with the contents of any document that bears the person's signature.'" *Gray v. Rent-A-Center W., Inc.*, No. CV 06-1058-HU, 2007 WL 283035, at *5 (D. Or. Jan. 24, 2007) (quoting *First Interstate Bank of Or., N.A. v. Wilkerson*, 128 Or. App. 328, 337 n.11, 876 P.2d 326, 330 n.11 (1994)), *rev'd on other grounds*, 314 F. App'x 15 (9th Cir. 2008), *vacated*, 295 F. App'x 155 (9th Cir. 2008). Although here there are two documents at issue (the Arbitration Agreement and the referenced Dispute Resolution Policy), Plaintiff's signature on the Arbitration Agreement attesting to his understanding of the Dispute Resolution Policy undermines his contention that he was unfamiliar with that Policy. In the end, however, because the Dispute Resolution Policy is not in the record and is not being considered for the purposes of resolving this motion, Plaintiff's "surprise" or "deception" argument is not persuasive even

assuming Plaintiff never received a copy of that Policy.[2]

While Plaintiff establishes that there was unequal bargaining power and a take-it-or-leave presentation of the Arbitration Agreement, he fails to demonstrate procedural unconscionability under Oregon law which requires additional evidence of surprise, deception, or compulsion which is not present here.

B.  Substantive Unconscionability

Terms relevant to substantive unconscionability include one-sided discovery, one-sided coverage, and the allocation of payment of arbitration fees.  *Hermida*, 2015 WL 6739129, at *4. Plaintiff bases his substantive unconsionability argument on the terms of one-sided coverage, a shortened limitations period, and the allocation of costs.

The Arbitration Agreement is one-sided in its coverage.  It states:  "I further agree that, in accordance with NGI's Dispute Resolution Policy, I will submit any dispute arising under or involving my employment or termination of employment with NGI within one (1) year from the date the dispute arose."  Gupta Decl., Ex. C, ECF 9 at 18.  This unambiguously requires Plaintiff, and not Defendants, to submit his employment-related disputes to arbitration.  There are two other sentences in the Arbitration Agreement, however, that could suggest a mutual requirement rather than a one-sided requirement.  Immediately following the above-quoted sentence, the Arbitration Agreement states: "I agree that arbitration shall be the exclusive forum for resolving all disputes arising out of or involving my employment or termination with NGI."  *Id.*  And, in the last bolded paragraph, the Arbitration Agreement states that "I understand that this arbitration

---

[2]  As noted above, Smith contradicts Plaintiff's assertion that he was not provided a copy of the Dispute Resolution Policy.  Smith Decl. ¶¶ 3, 5.

agreement requires that disputes involving matters subject to the agreement be submitted to mediation or arbitration pursuant to the Dispute Resolution Process rather than to a judge or jury in court." *Id.*

Because these last two quoted sentences do not specifically refer to "Plaintiff's" or the "employee's" disputes, but more generally state that "disputes" will be arbitrated, it could be argued that the arbitration requirement is reciprocal. But, this argument fails under fundamental contract interpretation standards. First, the specific language requiring only Plaintiff to submit disputes to arbitration controls over the more general language. Second, the more general language creates an ambiguity which is construed against the drafter, meaning Defendants. Therefore, only Plaintiff must submit employment-related disputes with NGI to arbitration.

The Arbitration Agreement also limits Plaintiff's claims to one year from the "date the dispute arose." *Id.* As Plaintiff notes, his FLSA claim alleging a willful violation of the statute has a three-year statute of limitations. 29 U.S.C. § 255(a). Finally, the Arbitration Agreement requires Plaintiff to pay for half of the arbitrator's cost and any incidental costs of arbitration.[3] *Id.*

In Oregon, the presence of a non-mutual arbitration requirement is not *per se* unreasonable. *Motsinger*, 211 Or. App. at 619-23, 156 P.3d at 162-165; *see also Torrance v. Aames Funding Corp.*, 242 F. Supp .2d 862, 871-72 (D. Or. 2002) (Oregon law does not require equivalent obligations for a contract to be enforceable and an arbitration agreement is not

---

[3] In his briefing, Plaintiff states that he is required to pay one-half of the costs of arbitration, up to two weeks of his salary from NGI. Pl.'s Resp. 12, ECF 15. In support, he cites to his Declaration. *Id.* There, he states that the Dispute Resolution Policy includes the "maximum of two weeks' worth of the salary I earned at NGI." Siggelkow Decl. ¶ 14. As previously noted, the Dispute Resolution Policy is not part of the record in regard to this motion and I do not rely on it. I confine my review to the terms as set forth in the Arbitration Agreement itself which contains no maximum limitation.

rendered unconscionable simply because the employer is not required to arbitrate all claims).

Instead, *Motsinger* instructs the court to focus on the *effects* of terms in an arbitration agreement. *Id.* The court favorably quoted a Washington case for the proposition that the court's concern was not "'with whether the parties have mirror obligations under the agreement, but rather whether the effect of the provision is so 'one-sided' as to render it patently 'overly harsh' in this case.'" *Id.* at 622, 156 P.3d at 164 (quoting *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wash. 2d 293, 317 n.16, 103 P.3d 753, 767 n.16 (2004)). *Motsinger* concluded that "an approach that focuses on the one-sided *effect* of an arbitration clause–rather than on its one-sided *application*– to evaluate substantive unconscionability is most consistent with the common law in Oregon regarding unconscionability of other kinds of contractual provisions and with state and federal policies regarding arbitration." *Id.* at 623, 156 P.3d at 164. Thus, courts applying Oregon law must determine "whether, given the unequal bargaining power, the effect of the arbitration clause makes the parties' respective obligations so unbalanced as to be unconscionable." *Id.* at 625, 156 P.3d at 165.

Considered under this standard, I agree with Plaintiff that the Arbitration Agreement here is substantively unconscionable. Although the unequal bargaining power and inability to negotiate terms is not enough to find the Agreement procedurally unconscionable, these facts are relevant, as *Motsinger* states, to the determination of whether the parties' obligations are unreasonably unbalanced. *See also Bagley*, 356 Or. at 555 n.7, 340 P.3d at 36 n.7 (noting that it "can be difficult to categorize the factors on which a determination of unconscionability may be based as distinctly procedural or substantive, and even factors usually considered in assessing procedural or unconscionability can help establish a violation of public policy" and that the

treatise *Williston on Contracts* suggests that "adhesive and fine-print terms may be substantively unconscionable"). Despite Plaintiff's title of "Director," Defendants do not contradict Plaintiff's assertion that his job was to provide maintenance to Defendants' restaurants. Thus, on these facts, it appears that Plaintiff was not hired into a sophisticated position where he could have possibly negotiated the terms of his employment relationship with Defendants. Instead, the facts show that this was a boilerplate Employment Agreement, was a boilerplate Arbitration Agreement, that it was presented to Plaintiff sometime during his first day of work but after he had actually started working, and was non-negotiable. Accordingly, there was unequal bargaining power. *Motsinger*, 211 Or. App. at 614-15, 156 P.3d at 160 (unequal bargaining power existed where employee received a standard form contract as part of hiring process and had to accept terms on a "take-it-or-leave-it" basis).

As described above, the arbitration requirement is one-sided. As to the one-year limitations period, Oregon law recognizes that an "arbitration agreement is unenforceable under the FAA if it denies a litigant the opportunity to vindicate his or her rights in the arbitral forum." *Vasquez–Lopez v. Beneficial Or., Inc.*, 210 Or. App. 553, 573, 152 P.3d 940, 951 (2007). Still, cases have recognized that contracting parties are free to amend claim limitation periods in their agreements. *E.g.*, *Farsi v. Sterling Jewelers, Inc.*, No. CV 07-131-PK, 2007 WL 2323317, at *4 (D. Or. Aug. 9, 2007) (noting, in the context of analyzing parties' arbitration agreement, that "[p]arties may agree to a shorter limitations period so long as the period is reasonable."); *see also Sprague v. Quality Restaurants Nw., Inc.*, 213 Or. App. 521, 527, 162 P.3d 331, 334-35 (2007) (noting that a reduced statute of limitations may, in fact, benefit a plaintiff by providing "an incentive to [file a claim] while the disputed events are fresh in the memories of witnesses and

parties.").

However, some of these cases have recognized a distinction between statutory and other claims or have found that the limitations period is consistent with the statutory claim limitations period.  For example the agreement at issue in *Miller v. Aqua Glass, Inc.*, specifically stated that for statutory violations, the applicable statutory time limit *or* the one year period in the contract, *whichever was longer*, applied.  No. 07-3088-CL, 2008 WL 2854126, at *5 (D. Or. Feb. 20, 2008), *adopted by J. Panner*, 2008 WL 2854125 (D. Or. July 21, 2008).  The court observed that the "fact that the parties agreed to a shorter limitations period for *non-statutory* claims does not render the [contract] invalid." *Id.* (emphasis added).  And, in *Farsi*, the court found the one-year period reasonable because it was the same time allowed to file a statutory violation claim with the Oregon Bureau of Labor and Industries.  *Farsi*, 2007 WL 2323317, at *4.

In a 2015 case, Judge Acosta concluded that the arbitration provision's two-year reduction from four years to two for filing a statutory warranty claim was not unconscionable because warranty issues on a motor home were likely to be discovered early and the agreement's time period gave the purchaser enough time to allow the manufacturer to attempt to remedy the problem before a claim had to be filed.  *Brown v. BYRV, Inc.*, No. 3:14-cv-01213-AC, 2015 WL 4507159, at *14 (D. Or. July 24, 2015).  But, in *Brown*, and in *Sprague*, both of which found the reduced limitations period reasonable, the customer still had two years to bring a claim.  Here, the period is one-year for statutory and non-statutory claims alike and substantially reduces the FLSA time period.  I find that it impairs Plaintiff's ability to vindicate his rights in the arbitral forum.

Finally, as to the cost-sharing provision, an arbitration clause is not rendered

substantively unconscionable solely because a plaintiff bears some of the costs. *Motsinger*, 211 Or. App. at 618, 156 P.3d at 162. But, when the cost-allocation provision effectively denies a party the "meaningful opportunity to vindicate his or her substantive rights due to prohibitive arbitration costs[,]" the arbitration clause is unenforceable. *Torrance*, 242 F. Supp. 2d at 874. *Vasquez-Lopez* found a cost-sharing provision unreasonable based on the uncontradicted evidence that by the second hour of the second day of the arbitration, the plaintiffs would owe $1,000 in arbitration fees which, based on their current earnings and expenses, would take them six months to save. *Vasquez-Lopez*, 210 Or. App. at 572-75,152 P.3d at 951-52. The court noted that such costs were large in absolute terms as well as when compared to a trial where the parties do not pay for the judge. *Id.* at 574, 152 P.3d at 952.

Other cases reached the opposite conclusion on distinguishable facts. *E.g.*, *Willis*, 878 F. Supp. 2d at 1225 (rejecting the plaintiff's claim that a cost-sharing provision was unconscionable when agreement did not set out basis for cost allocation and thus, court could not determine that the plaintiff would actually bear any costs and thus, any finding that provision was unconscionable would be speculative); *Guest v. Air Liquide Am. Spec. Gasses, LLC*, No. 3:17-cv-01969-AC, Findings & Rec. at 22-23 (D. Or. June 28, 2018) (cost provision in arbitration agreement which limited the plaintiff's share to an amount "equal to the then-current filing fee in the applicable State or Federal Court for a complaint or first appearance, whichever is lower" and under which the defendants paid the remaining fees and expenses, was not unconscionable), *adopted by J. Simon*, 2018 WL 3849788 (D. Or. Aug. 13, 2018).

The instant case is more like *Vasquez-Lopez* then *Willis* or *Guest.* In contrast to *Willis*, the Arbitration Agreement here expressly states that Plaintiff will bear "half of the cost of the

arbitrator and any incidental costs of arbitration." In contrast to *Guest*, the amount Plaintiff would be responsible for is much greater than a court filing fee. Plaintiff, assuming that his share would be limited to two weeks' of salary or $2,500, states that this amount would make it financially very difficult for him to proceed in arbitration. Siggelkow Decl. ¶ 14. And, given that the Arbitration Agreement does *not* contain the limitation to two weeks' of salary, I do not find the cost-splitting provision to be so limited and therefore conclude that Plaintiff's share of the costs would be higher than the $2,500 amount he calculates. Similar to *Vasquez-Lopez*, the amount here is high both objectively and compared to court costs.

When the cumulative effect of these terms is considered in light of the unequal bargaining power, I conclude that the Arbitration Agreement is substantively unconscionable. Taken together, the one-sided nature of the Agreement, the one-year limitations provision, and the cost-sharing requirement combine to effectively deprive Plaintiff of the full opportunity to vindicate his legal rights. Accordingly, even in light of the policy favoring arbitration, I deny the motion to compel arbitration.

CONCLUSION

Defendants' motion to compel arbitration [9] is denied. The Clerk shall set a telephone case scheduling conference at time convenient to the parties and the Court.

IT IS SO ORDERED.

Dated this ___22___ day of ___January___, 2019

___Marco Hernandez___
Marco A. Hernandez
United States District Judge

24 - OPINION & ORDER